**Ken BINGHAM and Joanne Bingham, Appellants (Plaintiffs),**

**v.**

**Jim BOREING; Vicki Boreing; and John Ainsworth d/b/a AARCO, Appellees (Defendants).**

**No. 90–130.**

Supreme Court of Wyoming.

Oct. 24, 1990.

Donald A. Cole of Cole & Cole Law Firm, Cheyenne, for appellants.

Steven F. Freudenthal of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for appellees.

Before URBIGKIT, C.J., MACY and GOLDEN, JJ., and RAPER and BROWN, JJ. (Ret.).

MACY, Justice.

Appellants Ken Bingham and Joanne Bingham filed a breach of contract suit against Appellees Jim Boreing and Vicki Boreing, because the roof on the house they purchased from the Boreings leaked. The district court concluded the Boreings had not warranted that the roof would not leak and denied the Binghams' request for relief.

We affirm.

The Binghams pose this issue:

Did the district court commit error in it[ ]s decision that the sellers/defendants did not breach the real estate sales contract by complying with the terms and conditions of the contract?

On January 16, 1989, the Binghams entered into a contract to purchase an existing residential dwelling owned by the Boreings. The following provision appeared in an addendum to the real estate purchase contract:

Roof to be inspected by a licensed roofer at [Boreings'] expense. Roof to be in insurable condition against sudden accidental damage or acts of God, ordinary wear and tear excepted. [Boreings] to pay for necessary repairs or replacement, if applicable.

John Ainsworth, who was hired by the Boreings to inspect the roof, was not licensed by the City of Cheyenne to be a roof inspector. He had obtained such a license from the City of Cheyenne in 1988, but that license was suspended effective March 28, 1989, because he failed to show proof of worker's compensation insurance coverage. Ainsworth performed his inspection of the roof on April 20, 1989, and his written report of inspection said:

The dwelling has a #1 wood Shake roof, approximately 1 to 2 years of age.

With proper maintenance, roof should be of good service for approximately 20 to 25 years.

Closing on the real estate transaction occurred on May 2, 1989, and the Binghams began occupying the house on May 5, 1989. The house, including its roof, has been continuously insured since the date of the purchase. After the Binghams moved into the house, they discovered that the roof leaked whenever there was substantial rainfall. They hired a roofing contractor to inspect the roof in June 1989. He found that the flashing on the roof and the felt beneath the shingles were improperly installed and that the pitch of the roof was inadequate in some locations. He concluded that the roof needed to be replaced at an estimated cost of $17,000. In addition, the interior of the house had been damaged by water from the leaks, and a carpenter hired by the Binghams estimated that it would cost $6,000 to repair that damage.

The Binghams brought an action against the Boreings and Ainsworth,[1] seeking a recision of the contract, compensatory damages, consequential damages, and punitive damages. The Binghams also sought their attorney's fees as part of the damage award. The Binghams' theory was breach of the contractual provision requiring that a roof inspection be made and that the roof be insurable.

The district court conducted a bench trial and determined that the roof inspection was one of several conditions which the Boreings were required to satisfy before the Binghams had an obligation to close the deal. The court found that the roof had been inspected, that the parties closed the deal, and that the Boreings' obligations ended upon the closing. The court concluded that the Binghams were not entitled to relief, because the Boreings had fulfilled their duties under the terms of the contract.

In their brief, the Binghams assert that one of the necessary characteristics of a roof being in an "insurable condition" is that it "keep out water." No authority is cited for this proposition, and we have found none. The Binghams do quote the

definition of "insurable," which is found in Black's Law Dictionary 720 (5th ed. 1979):

"capable of being insured against loss, damage, death, etc.; proper to be insured; affording a sufficient ground for insurance."

*Greenberg v. Continental Casualty Co.,* 24 Cal.App.2d 506, 75 P.2d 644, 649 (1938) (quoting Webster's New International Dictionary, Second Edition). The Binghams also emphasize the fact that the inspector was not licensed at the time he performed the inspection. Neither factor, however, is relevant to the question of whether the Boreings breached the contract.

We must apply our rules of contract interpretation to determine if a breach occurred:

The determination of the parties' intent is our prime focus in construing or interpreting a contract. "If an agreement is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the agreement." When the language is clear and unambiguous, the writing as a whole should be considered, taking into account relationships between various parts. Contract construction and interpretation are done by the court as a matter of law.

*True Oil Company v. Sinclair Oil Corporation,* 771 P.2d 781, 790 (Wyo.1989) (citations omitted) (quoting *Nelson v. Nelson,* 740 P.2d 939, 940 (Wyo.1987)). *See also St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255 (Wyo.1988). While we are not required to afford any special deference to a lower court's interpretation, we agree with the determination made by the district court.

We emphasize that the Binghams' appeal must rise or fall upon the theory they presented in the district court. *Medlock v. Merrick,* 786 P.2d 881 (Wyo.1990); *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.,* 750 P.2d 1324 (Wyo.1988). We agree with the district court that, when the language of the contract is read as a whole, the Boreings agreed to provide a roof in-

1. While the Binghams asserted claims against Ainsworth, service of process was never achieved, and those claims were not adjudicated.

spection in order to demonstrate that the roof was in an insurable condition. The fact that the roof inspector was not licensed is not relevant to a consideration of the limited issue we address here, because the record is clear that the dwelling passed all required inspections and that the Binghams obtained insurance on the roof. Although somewhat speculative, we can opine that, if the Binghams went to their insurance company concerning the leakage problem, the insurance company would respond that the policy covers damage resulting from a variety of catastrophes, not damage resulting from repair and maintenance. Nonetheless, what the Binghams bargained for, and what the Boreings provided, was an assurance that, if the Binghams purchased the dwelling, they would be able to obtain insurance on the roof for "accidental damage or acts of God." The Boreings fulfilled their obligations under the terms of the contract, and the Binghams obtained the specified insurance.

Affirmed.