**CITY COUNCIL OF LARAMIE,**
Wyoming, Appellant
(Defendant),

v.

**Kirk KREILING, Appellee (Plaintiff).**

No. 95–170.

Supreme Court of Wyoming.

Feb. 20, 1996.

Alan B. Minier and Andrea L. Richard of Rothgerber, Appel, Powers & Johnson, Cheyenne, for appellant.

Mary Elizabeth Galvan, Tracy L. Zubrod and Linda S. Basom of Mary Elizabeth Galvan, P.C.; and Mary J. Chinnock, Laramie, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

GOLDEN, Chief Justice.

Appellant City Council of Laramie (Laramie) appeals a bench trial verdict awarding police officer Kreiling (Kreiling) damages pursuant to 42 U.S.C. § 1983 and reinstatement.

We reverse.

## ISSUES

Appellant states these issues:

I. "Promotional Procedures" are not a property interest protected by the United States Constitution or actionable under 42 U.S.C. § 1983.

II. The District Court improperly limited the City's statutory and legislative authority to set employee salaries.

III. The District Court erred in concluding that the City breached its implied contract with Kreiling.

Appellee presents these issues:

I. The District Court's conclusion that Officer Kreiling had a contractually protected interest in promotion through the Patrolman I, II and III ranks and in the grievance procedures of the Personnel Rules is supported by the overwhelming weight of the evidence, and clear principles of contract law.

II. The Personnel Rules provide an independent source of mutually explicit "rules or understandings" underlying Officer Kreiling's protected property interest in Appellant's promotional procedures and their attendant benefits which were, as the District Court found, based on competent evidence, arbitrarily undermined by the application of the 1990 reclassification to Officer Kreiling's status as an employee.

III. The District Court did not limit Appellant's statutory or legislatively granted authority to set employees' salaries by holding Appellant to its constitutional and contractual obligations to its employees in implementing such reclassification.

## FACTS

For economic reasons, the City of Laramie amended its pay plan for patrol officers in the police department in 1990. Patrolman Kreiling claimed that the amendment as applied to him deprived him of contractual rights and he filed a grievance. The city manager of Laramie determined that the personnel rules did not permit a grievance hearing against a pay plan amendment and denied Kreiling's request for a hearing. Kreiling filed suit alleging breach of contract, promissory estoppel, and violations of federal procedural due process, substantive due process, and equal protection. Only the breach of contract and federal procedural and substantive due process claims survived pretrial motions and Kreiling does not appeal those pretrial decisions.

The due process claims arose from an asserted property interest in Kreiling's government employment. Kreiling relied on Wyoming's state civil service statutes, the City of Laramie Personnel Rules, the police department's General Order 89-3, and an employment contract between himself and the police department as the basis for his asserted property interest. That reliance necessitates that we understand the applicable provisions of those statutes, rules and policies, and the contract.

### State Statutes

In Wyoming, the governing body of all cities and towns may establish and regulate a police department, pass ordinances relating to the department and adopt job descriptions for all department personnel. WYO.STAT. § 15–1–103(a)(xxxiv) (1992). In accordance with Wyoming's civil service statutes, Laramie has established a police commission to employ and promote only those candidates the commission rules eligible by virtue of merit and experience. WYO.STAT. §§ 15–5–102, –105, –119 (1992). WYO.STAT. § 15–5–106(a) (1992) sets out the respective responsibilities of the commission and the city regarding position classifications:

> (a) The commissions shall classify the various positions in the departments into classes or schedules based upon the nature of the service to be rendered or duties to be performed. The governing body shall then establish uniform working hours and wages for all employees in each class or schedule and may regulate the rate of wages and the number of employees in any class or schedule as necessary. . . .

*See also* WYO.STAT. § 15–5–119(a)(i)(A) (1992). WYO.STAT. § 15–5–112(b) (1992) provides for discharge or reduction in pay or rank only upon cause and after notice and an opportunity to respond unless the action is pursuant to a classification program under WYO.STAT. § 15–5–106 (1992).

Under state statutes, the city manager controls and manages the police department. WYO.STAT. § 15–4–206(a) (1992). Although the city manager has further powers regarding other city employees, *see* WYO.STAT. §§ 15–4–202(g), –206(b) (1992), the state statutes treat police officers differently and vests most powers with the police commission, if established, and the city council. WYO.STAT. § 15–5–101 to –121 (1992).

### City of Laramie Police Department Civil Service Rules

These rules establish the Police Department Civil Service Commission. As directed by statute, the commission has organized positions in the police department into two classes: patrol officer and lieutenant. Other non-classified positions are established by the city council. City of Laramie Police Department Civil Service Rules, Chapter VI. Chapters V through XVI of the rules set out eligibility, employment, promotion, and discharge procedures.

### City of Laramie Personnel Rules

As permitted by the state statute, Laramie has promulgated a handbook of personnel rules applicable to all classified employees and administered by the city manager. City of Laramie Personnel Rules, §§ 1.22, 2.31.

Police officers classified as patrol officers or lieutenants are classified employees under the personnel rules and subject to those rules. *Id.* at § 1.22. Section 1.27 permits a department head to promulgate rules which are consistent with the personnel rules.

In accordance with the civil service statute, the rules require that positions be classified on the basis of the kind and level of their duties and responsibilities and all positions within a class must be sufficiently alike to permit use of the same job description, the same qualifications, and the same pay scale. *Id.* at § 3.11. The rules further provide that the city manager may revise the classification plan by adding, abolishing, consolidating, dividing, or amending existing classes. *Id.* at § 3.31. In addressing compensation, the rules state that there shall be salary ranges and those salary ranges shall be linked to the position-classification plan and shall be determined with due regard to ranges of pay for other classes, requisite qualifications, and other factors. *Id.* at § 4.12. The pay plan may be amended from time to time by the city council on its own initiative or on recommendations by the city manager, either through adjustment of rates or by reassignment of job classes to different pay ranges. *Id.* at § 4.13. Deviation from the pay plan for a new hire is permitted if the city manager deems it necessary to recognize exceptional qualifications of an applicant or if there are no available applicants at the minimum rate. *Id.* at § 4.21. The rules state that an employee's grade may be reduced as a consequence of reclassification of his position. *Id.* at § 11.51.

The rules also provide for six kinds of disciplinary action for a list of specified conduct constituting unsatisfactory performance. *Id.* at §§ 12.12, 12.22. Written notice and an opportunity to be heard is required before dismissal. *Id.* at § 12.42. However, the city has reserved the right for summary dismissal. *Id.* at § 13.51. The rules also reserve the city's right to abolish positions or conduct a reduction-in-force, *id.* at § 13.31, subject to a scheme which any employee laid off may utilize to retain employment. *Id.* at §§ 13.3–13.35.

Finally, grievance procedures and appeal procedures are set out at length in Section 14; however, the procedures are separate and distinct. *Id.* at §§ 14.1–14.48. Sections 14.11 through 14.14 assure classified employees that all grievances will be promptly considered by the department head who shall report the grievance to the city manager. *Id.* at § 14.12. The city manager is charged with the responsibility of determining if the grievance has been settled to the satisfaction of the employee and, if not, the employee may request the city manager to investigate or the city manager may initiate an investigation of his own. *Id.* at § 14.13. In case an agreement is not reached with the city manager, the employee may ask for a hearing of his grievance before the personnel board. *Id.* at § 14.14.

Although grievances are not limited to specified subjects, an appeal is confined to disciplinary actions, *id.* at § 14.21, specified as

> reduction-in-grade, a suspension of more than ten (10) calendar days, a dismissal, and any other actions affecting the status of the employee, on the grounds that the action or decision complained of resulted from one or both of the following factors:
>
> (a) Failure to observe or correctly apply the provisions of these rules or the terms of his appointment.
>
> (b) Incomplete consideration of the facts.

*Id.* at § 14.41.

*Pay Classification System*

Since 1987, the Laramie City Council has operated a pay classification system which provided salary increases to police officers based upon time in service and satisfactory performance. Under that pay classification system, an entry level police officer was classified as a Patrolman I, Grade 15, Step A. Upon successful completion of a six month probationary period, the officer's pay increased to that of Grade 15, Step B. Thereafter, the officer's pay increased every twelve months through Steps C, D, and E if performance was satisfactory. An officer's progression continued at twelve month intervals to Patrolman II, Grade 17, Steps 17D and 17E, and Patrolman III, Grade 19, which

consisted of Steps D and E with the same twelve month progression. The next position classification under the pay scheme was lieutenant; however, a police officer's promotion to a lieutenant's position only resulted from a competitive selection process.

Kirk Kreiling was hired by the City of Laramie Police Department on January 2, 1989, as a Patrolman I. Before his employment with the City of Laramie, Kreiling had served as a deputy sheriff and police officer in McDonough County and Urbana, Illinois for three and one-half years. Because of this prior service, the parties agreed that Kreiling should be hired at a higher rate of pay. On January 2, 1989, a beginning Patrolman I was classified at a Grade 15, Step A. Under the terms of his contract, one month after receiving his POST certification, Kreiling received an increase to Grade 15, Step B, and later in 1989, Kreiling moved to Grade 15, Step C. Specifically, the district court found that

> [b]ecause of his prior law enforcement experience, plaintiff was promised that he would be hired as a Patrolman I, Grade 15B, where he was to serve his probationary 6 months, and then advance through the steps and grades at 12 month intervals. He was, however, hired at Patrolman I, Grade 15A, and held there for one month, until he had his POST certification. Plaintiff does not contest this modification of his original hiring terms.

The district court also found that the evidence showed that the effect of the contract was his early advancement through the steps in Grade 15 with concomitant early advancement to Grade 17 (Patrolman II) and then to Grade 19 (Patrolman III).

On August 21, 1989, the chief of police for Laramie issued General Order 89–3 which stated its purpose was to establish and clarify the policies of the department regarding organization, rank and seniority. That order confirmed the following order of rank:

1. Chief of Police
2. Captain
3. Lieutenant
4. Patrolman III
5. Patrolman II
6. Patrolman I

The order stated the following concerning seniority:

\* \* \* \* \* \*

B. Seniority within the patrolman ranks shall be determined first by rank and second by continuous time in service.

C. Special situations or operations may necessitate a lower ranking and/or less senior officer being placed in command. These situations will be specifically outlined or authorized by the Chief of Police.

At trial, the chief of police testified that the civil service statute and the personnel rules authorized the issuance of such an order by the chief of police. Section 1.27 of the personnel rules for the City of Laramie authorizes a department head's establishment of such rules. One purpose served by the ranking system was to designate supervision for officers below the rank of lieutenant. When supervision by a lieutenant was unavailable, the police department established a procedure to have supervision limited to Patrolman III officers but also authorized Patrolman II officers to act as supervisors on a case by case basis. A second purpose served was in selecting overtime assignments. When overtime was available, Patrolman III's were offered the first opportunity for an assignment.

The ranking system also served the purpose of determining eligibility for promotion to a lieutenant's position. In 1991, a vacancy occurred in a lieutenant's position for the first time in approximately ten years. The police department requested that the civil service commission certify a pool of applicants who would be eligible to take the lieutenant's examination. The police department recommended that the pool of applicants be limited to officers in the Patrolman III grade. A memo was issued that only Patrolman III officers were eligible to test for lieutenant. However, the City of Laramie Police Department Civil Service Rules, Chapter X, Section 9, do not limit by rank, but instead limit by time in service. Section 9 states that "[a]ll internal candidates for Lieutenant shall have three years of service, two of which must be in the Laramie Police De-

partment, as of the date the promotional examination commences." Despite the fact that Kreiling had three years of time in service and met the rules' requirement, he was considered ineligible to test for the lieutenant's position because he was not a Patrolman III.

On July 1, 1990, the Laramie City Council, the duly organized governing body of the City of Laramie, amended its pay plan and implemented a city-wide reclassification plan. Under the new system, Patrolman I was reclassified to Grade 17. Kreiling was reclassified as Patrolman I, Grade 17, Step A. The city council implemented the new plan on an equal pay method except at those steps that would not exist under the new plan and at Step E of the grades, claiming this method "spread the cost of implementation and reduce[d] the cost of immediate implementation." This plan resulted in persons moving ahead one grade and back one step in order for the pay to remain the same. Laramie asserts that the reclassification was done to attract higher quality employees to entry level city positions and the parties agree the reclassification was not done for an improper motive.

Kreiling was reclassified as Grade 17, Step A, but believed he should have been reclassified as Grade 17, Step B. Kreiling discussed the misapplication with his supervisor. That supervisor advised the chief of police that there appeared to have been an inconsistency which might be remedied with a minor modification, but no action was taken. Kreiling then filed a grievance. The city manager of Laramie determined that Kreiling could not challenge a pay plan reclassification and determined that the matter was neither grievable nor appealable. Kreiling filed suit.

The district court found as follows:

6. Because of his prior law enforcement experience, plaintiff was promised that he would be hired as a Patrolman I, Grade 15B, where he was to serve his probationary 6 months, and then advance through the steps and grades at 12 month intervals. He was, however, hired at Patrolman I, Grade 15A, and held there for one month, until he had his POST certification. Plain-

tiff does not contest this modification of his original hiring terms.

\* \* \* \* \* \*

9. Plaintiff testified that based on his early advancement through Patrolman I, Section 4.41 of the Personnel Rules, and the understandings under which he was hired, the effect of his early advancement to Grades 15B and 15C would have been concomitant early advancement to Patrolman II, Grade 17D by August 1992 (after 43 months); and Patrolman III, Grade 19D by August 1994.

\* \* \* \* \* \*

17. The effect of reclassification on plaintiff, therefore, was the negation [of] the early advancement earned by him upon being hired by virtue of his prior experience; loss of the wage increase afforded all other officers in Grade 15, and has delayed his promotion through the grades to the rank of Patrolman II by 23 months and the rank of Patrolman III for a full year; concomitant losses of salary by being held back in grade from promotion; and privileges attendant on seniority, including the opportunity for supervisory authority and experience, and eligibility to compete for promotion when a vacancy at the lieutenant's rank becomes open.

\* \* \* \* \* \*

29. Flip McConnaughey neither determined whether the grievance had been settled to the employees' satisfaction, nor considered the specific concerns of the employees as expressed in their grievance, but instead, determined that the reclassification as it applied to plaintiff was neither grievable nor appealable.

\* \* \* \* \* \*

36. The testimony of [police officers established] that the order of rank, as defined in General Order 89-3, is necessary for the orderly function of the chain of command in a paramilitary organization.

\* \* \* \* \* \*

38. The weight of the evidence is persuasive that General Order 89-3, promulgated pursuant to the powers conferred on the Police Chief by Section 1.27 of the Person-

nel Rules, is more than an "internal memorial of preferred procedure" and that it governs the definition of rank, and that Patrolman I, II, and III are recognized separate ranks within the Police Department.

39. Based on the consideration for early advancement promised plaintiff at the time of his initial hire, the order of rank within the Police Department, as defined by General Order 89–3 and the promotional policies of the Personnel Rules, plaintiff had a reasonable expectation that absent disciplinary cause, he would be promoted to the rank of Patrolman II on September 1, 1992, and to the rank of Patrolman III on September 1, 1994.

\* \* \* \* \* \*

43. As a result of the negative impact of the reclassification as it applied to him, plaintiff lost salary at each step of the Patrolman I rank and grade, and in his delayed promotion to the rank of Patrolman II.

Based on these findings of fact, the district court made these conclusions of law:

6. Here, the Personnel Rules creates [sic] an implied contract of employment with respect to its grievance and promotion policies which were breached by Flip McConnaughey's denial of plaintiff's right to pursue his grievance of the negative impact of the 1991 [1] reclassification as it applied to plaintiff, and by the reclassification's negative impact on plaintiff's promotion, and consequent salary increases, to the ranks of Patrolman II and Patrolman III, and the denial of the wage increase afforded to other police officers in the reclassification.

7. Clearly, the Personnel Rules are intended to be published to defendant's employees with the expectation that employees will understand that the Personnel Rules govern the terms and conditions of their employment, and that they confer on both the employer and the employee rights and privileges as well as concomitant responsibilities and obligations. The Personnel Rules are more than a simple recital of benefits; they make commitments to the employees that they will be followed. In exchange for the reliance on the rights and privileges conferred on the employee, defendant secures an orderly, cooperative work force.

\* \* \* \* \* \*

10. Clearly, plaintiff's grievance was based on the effect of the reclassification on his status as an employee. He was denied a wage increase afforded similarly situated officers; he was effectively demoted from midway through the Patrolman I grade to entry level status, both in terms of salary and step in grade, and he was detained at the Patrolman I rank twenty-five months longer than he should have been.

11. [The] denial of plaintiff's right to prosecute his grievance violated the grievance procedures of the Personnel Rules and constitutes a breach of that contractual provision.

\* \* \* \* \* \*

17. As a direct and proximate result of the breach of contract with respect to promotion procedures, plaintiff is entitled to immediate promotion to the rank of Patrolman III, together with full compensation for salary losses incurred between the time of the reclassification in July 1991 [sic], through the date of his promotion to Patrolman III at an interest at 10% per annum.

\* \* \* \* \* \*

20. As a matter of law, the Personnel Rules of the defendant constitute rules and understandings which define certain benefits in employment to defendant's employees; in this case, through its promotion procedures and with respect to the ranks incorporated into the Personnel Rules through General Order 89–3. The Personnel Rules, as a matter of law, have been designed and promulgated to induce defendant's employees to rely on its commitments that, absent disciplinary cause, police officers will be promoted through the Patrolman ranks based on time in service. The entitlement to promotion through the

---

1. The correct year is 1990.

ranks [is] more, therefore, than a unilateral expectation by plaintiff that he would have been promoted to Patrolman III by September 1994. As a matter of law, plaintiff had a protected property interest in the promotion procedures guaranteed by the Personnel Rules and in his expectation of orderly promotion through the Patrolman ranks.

Following a bench trial, the district court ruled that the personnel rules created an implied contract with respect to its promotional procedures which Laramie had breached. The court awarded damages for this breach. The district court ruled that an interest in promotional procedures is a recognized property interest as a matter of law and awarded damages pursuant to 42 U.S.C. § 1983 and held Kreiling was entitled to an attorney fees award. The district court ruled that the personnel rules also created an implied contract with respect to its grievance procedures which Laramie had breached but did not specify damages. Instead, the court ruled that that breach was the basis for concluding that Laramie had denied Kreiling due process.

The district court, however, distinguished between the classification system's "promotional procedures" for a patrolman and a promotion to lieutenant. Finding that a promotion to lieutenant was discretionary, the district court ruled that Kreiling had no property interest in sitting for the lieutenant's examination for promotion or in the position. Kreiling was awarded damages and ordered reinstated. This appeal followed.

## DISCUSSION

*Standard of Review*

 In response to Laramie's Wyo. R.Civ.P. 52(a) motion, the district court entered findings of fact and conclusions of law. On appeal, the district court's findings of fact will not be overturned unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *M & M Welding, Inc. v. Pavlicek,* 713 P.2d 236, 239 (Wyo.1986). The district court's conclusions of law are reviewed de novo. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993).

*Property Interest*

The district court's decision awarding back pay and reinstatement was based in part upon its conclusion that because police officers were entitled to promotions through the Patrolman ranks based on time in service, police officers had a protected property interest in the promotion procedures guaranteed by the personnel rules and in the expectation of orderly promotion through the Patrolman ranks. A deprivation of Kreiling's property rights in rank and promotional procedures without due process entitled him to damages.

Laramie's argument for reversal on this issue is simple: Officer Kreiling had no rank and, therefore, had no property interest incident to rank or contractual rights regarding rank. Laramie contends that the grade and step nomenclature was merely pay table terminology and did not confer rank. In its view, Kreiling's property interest exists only in his continued employment in the position of patrol officer. Laramie further asserts that the general order did not transform pay table terminology to rank but merely established a "pecking order" which does not rise to the level of a constitutionally protected property interest or alter the personnel rules' terms of employment. In addressing the district court's finding that Kreiling and the police department had contracted for early advancement at the time of his initial hire, Laramie asserts that the record does not support a finding that Kreiling would continue to benefit from early advancement. Instead, according to Laramie, it merely supports a finding that Kreiling received his salary increases sooner because the City saved the cost of academy training.

Continuing, Laramie asserts that the district court erred in holding that Kreiling had a property interest in promotional procedures for two reasons: 1) progressions along the pay table at twelve month intervals are not promotions, and 2) even if deemed promotions, progressions are not a constitutionally protected property interest.

### 1. *Rank*

■ Courts can only determine whether a deprivation of a constitutionally protected interest has occurred without due process of law and cannot provide a forum for resolution of personnel disputes, mistakes, or unfair administrative actions. *See Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Accordingly, we initially determine whether Kreiling was deprived of a protected property interest.

■ The Due Process Clause of the Fourteenth Amendment provides procedural safeguards against the government's arbitrary deprivation of life, liberty, or property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The district court ruled that Kreiling was deprived of property interests in his employment with Laramie by the arbitrary action of the city manager.

■ The threshold issue then is to determine the property interest in city employment. As this court stated in *Abell v. Dewey,* 870 P.2d 363 (Wyo.1994), the United States Supreme Court has recognized that the federal constitution does not create a property interest, but one may arise through independent sources such as state statutory law, regulations or the terms of employment. *Abell,* 870 P.2d at 370 (citing *Roth,* 408 U.S. at 577–78, 92 S.Ct. at 2709). The property interest arises when these sources create for an employee a "legitimate claim of entitlement" to certain benefits of employment. *Abell,* 870 P.2d at 370. "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709); *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). The nature and scope of this property interest (that is, the number and sort of benefits) depend upon the state law creating the claim of entitlement, *Mandel v. Allen,* 889 F.Supp. 857, 865 (E.D.Va.1995), but the federal constitution protects against the arbitrary deprivation of benefits that fall within the scope of the property interest conferred by state law. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The property interest may extend to rights that are incident to employment. *Mandel,* 889 F.Supp. at 865; *Roth,* 408 U.S. at 576, 92 S.Ct. at 2708; *Schultz v. Regents of University of Cal.,* 160 Cal.App.3d 768, 206 Cal. Rptr. 910, 913–14 (1984).

■ The district court determined that policies and a contract had conferred a ranking system and that Kreiling had a property interest in his rank. An interest attains the status of "property" by virtue of the fact that it has been initially recognized and protected by federal or state rules of law. *Bishop,* 426 U.S. at 344–45, 96 S.Ct. at 2077–78. A mutually recognizable entitlement will receive constitutional protection. *Perry,* 408 U.S. at 602, 92 S.Ct. at 2700; *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. In considering whether Kreiling has a "property interest" in being classified as Patrolman I, Grade 17, Step B, the court must consider the relevant state law and regulations, or other mutually explicit understandings. *See Brown v. Ledbetter,* 569 F.Supp. 170, 172–73 (N.D.Ga.1983); *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The district court ruled that the disseminated written policies created expectations that they would be followed causing the policies to become contractual in nature. Laramie agrees that the personnel rules create an implied contract of employment and its terms create contractual obligations.

■ The thrust of the district court's decision is that under the personnel rules, General Order 89–3 permissibly transformed the pay table terminology of Patrolman I, II, and III into a ranking system. Kreiling acquired a property interest in that "rank" by virtue of his contract for early advancement. The district court found that, as applied to Kreiling, the reclassification caused him to be "demoted." Although the reclassification actually raised Kreiling's grade with no loss of position or pay suffered and maintained his time in service, we accept the court's terminology for purposes of analysis. *See Schultz,* 206 Cal.Rptr. at 913 (difference between de-

motions and reclassification is one of substance). Laramie's personnel rules distinguish between a demotion due to disciplinary action and a demotion due to an amendment to the pay plan. The former may only occur for cause, thus establishing a property interest in continued employment. *See Lucero v. Mathews,* 901 P.2d 1115, 1120 (Wyo.1995). The latter type of demotion may occur in accordance with the government's right to address its organizational needs and does not establish a property interest. *Mandel,* 889 F.Supp. at 866. This rule is viewed as fairly balanced towards preserving the government's right to achieve efficiency and economic considerations while preserving the employee's right to protection against job actions directed specifically at him. *Mandel,* 889 F.Supp. at 866. Because the personnel rules did not create a legitimate expectation that the pay table could not be amended, Kreiling does not have a property interest in his step classification. *Mandel,* 889 F.Supp. at 873.

The police department's general order did not change the distinction and could not alter the personnel rules' reservation of the right to amend, including reducing steps or pay, as part of a compensation scheme reorganization. In the absence of disciplinary proceedings, Kreiling had only a unilateral expectation of continued progression on the pay scale which did not rise to the level of a property interest. *See Mandel,* 889 F.Supp. at 867.

The district court recognized the above; however, it believed that Kreiling was an exception to this rule by the contractual rights he gained upon his hiring. This court has said:

> [E]very breach of a public contract is not actionable as a violation of constitutional rights. Therefore, the federal courts distinguish between "mere" contract rights and property rights created by contract. [citations omitted]

> > Even though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection. "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Perry,* 408 U.S. at 602, 92 S.Ct. at 2700),.... Federal law accordingly may differentiate between contractual rights. Our problem, then, is to determine what kinds of contracts with the state create rights that are protected by the Fourteenth Amendment.

*Abell,* 870 P.2d at 372 (quoting *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County,* 825 F.2d 1404, 1408–09 (9th Cir.1987)).

Under the personnel rules, the minimum rate of pay is to be paid to new employees. However, the rules also provide that a higher rate of pay may be offered to a new hire who possesses exceptional qualifications. The testimony at trial established that, when hired, Kreiling received a higher rate of pay because of prior experience. The testimony also established that the effect of the higher rate was to place him at a higher position on the pay plan structure, Grade 15, Step B and that, ordinarily, an officer will spend one year at that step before advancing to Step C. Kreiling, with the approval of the city manager, only spent six months at Step B before he was advanced to Step C.

There was no evidence, however, that any agreement was struck which granted Kreiling additional time in service for purposes of pay plan classification and no evidence that any agreement existed to exempt Kreiling from a pay plan amendment. *See Schultz,* 206 Cal.Rptr. at 914. Without this evidence, the district court's determination that Kreiling had a contract for early advancement is clearly erroneous. Kreiling had contracted to start employment at a higher rate of pay.

In view of the above, neither statute, rule, written policy nor contract were *mutually explicit understandings* supporting a legitimate claim of entitlement in a benefit. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Perry,* 408 U.S. at 602–03, 92 S.Ct. at 2700. Kreiling

could not reasonably expect that the pay table would not be reclassified at the sole discretion of the city council. *See Schultz,* 206 Cal.Rptr. at 915.

### 2. *Promotional Procedures*

 Kreiling claimed that the personnel rules guaranteed the timing of his advancement through the grades and steps of the pay plan and this substantive interest rose to the level of a constitutionally protected property interest. He claimed that the reclassification delayed that timing, depriving him of that property interest without due process. Kreiling makes no argument that he was entitled to a predeprivation hearing, only a postdeprivation hearing.

Using the terminology "promotional procedures," the district court determined that Kreiling did have a property interest in his progression on the pay scale and was deprived of that interest when the reclassification plan was applied to Kreiling without regard to his early advancement. Critical to this ultimate conclusion was the district court's initial determination that, absent disciplinary cause, police officers will be promoted through the Patrolman ranks based on time in service. This determination is clearly erroneous because progression on the pay scale includes a discretionary feature, namely, a supervisor must determine performance is satisfactory, preventing the promotional procedures from rising to the level of a property interest. At most, Kreiling had only a unilateral expectation that he would progress through the pay table at twelve month intervals.

 Assuming without deciding that the pay table progression is a promotion, research indicates that courts have acknowledged the possibility that a property interest in promotion might exist. *See Bigby v. City of Chicago,* 766 F.2d 1053, 1059 (7th Cir. 1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) (collecting cases which "assume" the possibility of a property interest in promotion); *see also Schwartz v. Thompson,* 497 F.2d 430, 433 (2d Cir.1974) (circumstances are conceivable where a promotion would be virtually a matter of right). However, a property interest does not exist when a promotion depends upon the discretion of a supervisor. *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (without substantive limitations on official discretion, no liberty interest was created); *Swartz v. Scruton,* 964 F.2d 607, 610 (7th Cir.1992) (no entitlement to a merit pay increase per se when based on multiple layers of contingency).

There was much argument between the parties as to whether *International Ass'n of Firefighters, Local 2069 v. City of Sylacauga,* 436 F.Supp. 482 (N.D.Ala.1977), supported the district court's determination that promotional procedures are a recognized property interest as a matter of law. In that class action, before determining that the property interest was constitutionally protected, the court determined that applicable state law required that promotion of fire fighters occur only after competitive examination. Since it was likely that a member of the class would be promoted following testing, the court found a property interest in the promotional procedures. *Sylacauga,* 436 F.Supp. at 490. Those are not the facts of this case. Kreiling would progress through the pay table at regular intervals if his performance were satisfactory. There is no question but that his performance was satisfactory; however, the discretionary feature of the pay table prohibits our determination that a property interest exists in progression, meaning that Kreiling had only a unilateral expectation that he would progress through the pay table at regular intervals.

### 3. *Misapplication of the Reclassification Plan*

Next, we address the district court's determination that the amended pay plan was misapplied as to Kreiling and caused him not to receive the pay increase which the reclassification had given to other officers. The district court found:

15. Within the Laramie Police Department, all officers at Grade 15, including plaintiff, were reclassified to Grade 17. All officers at Grades 15A and 15B were reclassified to Grade 17A and received a wage increase as a result of the reclassification; all officers at Grade 15E were re-

classified to Grade 17E and received a wage increase as a result of the reclassification. A year of service time was removed from Patrolman II, now reclassified to Grade 18E, and Patrolman III was reclassified to Grade 20D through 20E.

16. Although plaintiff, at Grade 15C, was eighteen months through Grade 15, he was reclassified back to the entry level grade for Laramie Police Officers and received no wage increase as a result of the reclassification.

17. The effect of reclassification on plaintiff, therefore, was the negation [of] the early advancement earned by him upon being hired by virtue of his prior experience; loss of the wage increase afforded all other officers in Grade 15, and has delayed his promotion through the grades to the rank of Patrolman II by 23 months and the rank of Patrolman III for a full year; concomitant losses of salary by being held back in grade from promotion; and privileges attendant on seniority, including the opportunity for supervisory authority and experience, and eligibility to compete for promotion when a vacancy at the lieutenant's rank becomes open.

■■■■ As a matter of law, the city council's decision to treat pay increases differently is not a due process violation for the reason that there is no property interest in the discretionary pay increase which resulted from the reclassification. *Mandel*, 889 F.Supp. at 866. The state statutes and Laramie's rules only provide for due process when pay is reduced for cause meaning that Kreiling only had a unilateral expectation his pay would increase as a result of the reclassification. The district court's determination that the property interest in rank entitled Kreiling to the pay increase has already been held to be error and as such no legal remedy under 42 U.S.C. § 1983 is available to Kreiling for this decision to treat pay increases differently.

### Breach of Contract

#### 1. Breach of Promotional Procedures

Under the personnel rules, progression along the pay table was a function of both time in service and quality of performance. In the absence of reclassification or disciplinary action, a police officer was guaranteed to progress through the pay table at least at twelve month intervals. The district court determined that the reclassification, as applied to Kreiling, breached the promotional procedures. This ruling is reversed based on the language of the personnel rules which permits alteration of these procedures for the purpose of reclassification. Furthermore, we find no basis in the record for determining that Kreiling had a contractual right to his step classification which would exempt him from reclassification.

#### 2. Breach of Grievance Procedures

The district court ruled that the failure to properly prosecute Kreiling's grievance was itself a breach of contract; however, the court did not specify damages for this breach. Personnel Rules 14.13 and 14.14 state:

14.13 The City Manager, upon receipt of the report of the Department Head, shall determine whether the matter has been settled to the satisfaction of the employee, and, if not, the employee may request that the City Manager consider the matter, or the City Manager on his own initiative may make an investigation or cause an investigation to be made.

14.14 In case an agreement is not reached with the City Manager by the employee, the employee may ask for a hearing of his grievance before the Personnel Board.

The city manager testified:

I denied Officer Kreiling's request for a grievance hearing because he was asking me and/or the Personnel Board to overrule the City Council's determination of classification and salary, which I do not understand that either I or the Personnel Board have any power to do. That left nothing for the Board to consider in a grievance appeal.

■■■■ The district court found that the city manager had not complied with Rule 14.13 when he did not consider the employees' specific concerns. The district court

ruled that the failure to permit Kreiling to pursue his grievance of the negative impact of the reclassification as it applied to Kreiling breached the contract's grievance procedures. Contract construction and interpretation are done by the court as a matter of law and, primarily, must determine the parties' intent. *Bingham v. Boreing,* 799 P.2d 284, 285 (Wyo.1990). If an agreement is in writing and the language is clear and unambiguous, the writing as a whole should be considered, taking into account relationships between various parts. *Id.* We conclude that the denial of a grievance hearing did not constitute a breach of contract under the personnel rules.

Significantly, other than permitting the employee to ask for a hearing before the personnel board, the section governing grievances is silent as to what procedures the city manager should utilize upon receipt of the grievance hearing request. That silence does not limit the possible actions only to holding a grievance hearing, but, instead, indicates that other possibilities exist including permitting the city manager to deny a hearing request. While the city manager's choice of action in the form of a denial may constitute a denial of due process when a property interest is alleged, that same choice in the form of a denial when no property interest exists cannot constitute a breach of contract under the express language of the personnel rules.

A different case would be presented had Kreiling directed a request to the personnel board. The personnel rules state that the board's duty and function is to receive, investigate, and render a decision on all employee appeals, as outlined in Section 14 of these rules. *City of Laramie Personnel Rules,* § 2.28(c). Given the language permitting grievance requests to the personnel board, it would appear that the board would have had a duty to hold the requested grievance hearing. *Id.* § 14.14. Kreiling testified that he made no such request. Accordingly, we hold that the city manager's denial of Kreiling's request for a grievance hearing was not a breach of contract.

## CONCLUSION

The district court's decision failed to consider the state statute's and the employment contract's reservation of the right to amend a pay table for economic reasons. Under this law and contract term, mutually explicit understandings regarding rank and pay did not exist which would give rise to a constitutionally protected property interest. Nor was there a breach of the employment contract in implementing a reclassification plan which resulted in a step reduction for Kreiling and which did not give him the same pay increase given other police officers. The district court's decision that Kreiling is entitled to damages for violations of 42 U.S.C. § 1983 and for breaching the promotional procedures of .the contract is reversed. The district court's decision that the city manager's actions breached grievance procedures of the contract is also reversed for the reasons just discussed.